**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TaMIKIA MICHELE TAYLOR-HOLMES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 06 C 2668 |
| ) | |
| **OFFICE OF THE PUBLIC GUARDIAN,** ) | Judge Rebecca R. Pallmeyer |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff TaMikia Taylor-Holmes brought this lawsuit challenging the process by which state officials took her children from her custody. In response to the motion for summary judgment filed by Defendant, the Office of Public Guardian ("OPG"), Plaintiff asserts that her case is "not a review of the juvenile court system proceedings or decisions, but for the Judicial Misconduct of the OPG who conspired with other parties" to deprive Plaintiff and her children of their due process rights. (Pl.'s Resp. at 5 of 86 [Doc. No. 168].) Plaintiff has no admissible evidence of a conspiracy or other misconduct on the part of Defendant or other participants in the state court proceeding, however, and at bottom seeks an order returning her children to her custody. The court concludes this case is barred by the *Rooker-Feldman* doctrine and that Plaintiff's due process claims fail on the merits. Defendant is entitled to summary judgment.

## PROCEDURAL HISTORY

In this lawsuit and in the state court, Plaintiff has been represented by a number of attorneys, both retained and appointed. All of her attorneys have been granted leave to withdraw and she now proceeds *pro se*. This lawsuit is one of four filed in our court; three others have been dismissed. As summarized by our Court of Appeals, Ms. Taylor-Holmes alleges here "that the Cook County Public Guardian did not act in the best interests of her children, failed to disclose relevant records at custody hearings, falsified or otherwise tampered with records, participated in secret hearings, delayed proceedings, and discriminated against her on the basis of her race and religion."

This court dismissed the complaint without prejudice, and Plaintiff's appeal from that ruling was dismissed. *Taylor-Holmes v. Office of the Cook County Public Guardian*, 503 F.3d 607, 608 (7th Cir. 2007) [Doc. No. 47] (dismissing appeal for want of jurisdiction).

After the case was remanded, the Office of Public Guardian ("OPG") moved to dismiss the case as barred by the Eleventh Amendment. This court concluded that the OPG is a county office, not a state office, and therefore denied the motion. [Doc. No. 67.] Defendant's *Rooker-Feldman* and *Monell* defenses, raised for the first time in Defendant's reply memorandum, were overruled without prejudice. Plaintiff, who had sought an order directing the preparation of certain transcripts, again filed a notice of appeal; again the appeal was dismissed. [Doc. No. 92.] The court appointed counsel to represent Plaintiff [Doc. No. 76], but after several months of discovery, appointed counsel sought and was granted leave to withdraw, citing irreconcilable differences with the client. [Doc. No. 106, 109.] Ms. Taylor-Holmes filed a further *pro se* appeal—this time from a discovery order—but that appeal, too, was dismissed. [Doc. No. 140.]

OPG has now moved for summary judgment, raising the same arguments presented in the motion to dismiss. OPG urges, further, that the evidence is insufficient to establish Plaintiff's conspiracy claim or her due process claim. As required by our court's Local Rule 56.1(a)(3), OPG's motion is supported by "a statement of material facts as to which the moving party contends there is no genuine issue . . . ." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to identify, with evidentiary citations, any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Defendant OPG has explained these rules to Plaintiff by way of the "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [Doc. No. 165] called for in *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Despite this notice, Plaintiff has not filed a response in numbered paragraphs, and the court

therefore assumes Defendant's 56.1 statement is true, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006), but will consider, as well, factual materials Plaintiff has submitted in response to the motion in the light most favorable to her.

**FACTS**

Plaintiff, a resident of Cook County, is the mother of four children. (Def.'s 56.1 ¶ 2, 7.) On a date prior to June 16, 2003, Sharon Richardson, a representative of the Illinois Department of Children and Family Services ("DCFS"), called Plaintiff on her cell phone. (*Id.* ¶ 10.) As a result of the call, Plaintiff learned that Ms. Richardson wanted to interview three of her children in response to a report made in a call to the DCFS "hot line." (*Id.* ¶ 11.) Plaintiff agreed to meet with Ms. Richardson, and Ms. Richardson arrived at Plaintiff's home on the morning of June 16, 2003 before 9:00 a.m. (*Id.* ¶¶ 12,13.) Calvin Holmes, the father of one of the children, arrived at about the same time and had a brief conversation with Ms. Richardson, out of Plaintiff's earshot. (*Id.* ¶¶ 14, 15.) At Richardson's request, Plaintiff drove her three sons to the DCFS office, where they met individually with Richardson, each for less than ten minutes, and were then returned to Plaintiff. (*Id.* ¶¶ 16-20.) Plaintiff did not ask her children about the interviews. (*Id.* ¶ 21.) Ms. Richardson advised her that, based on the information they provided, the children were going to be removed and placed in temporary custody. (*Id.* ¶ 22.) Richardson and Plaintiff discussed options, and later that day the children were placed temporarily with a friend of Plaintiff's mother. (*Id.* ¶ 25.)

On July 11, 2003, the Cook County State's Attorney presented a petition asking the Cook County Circuit Court to place the children in the temporary custody of DCFS. (*Id.* ¶ 26.) Circuit Court Judge Candace Fabri appointed Michele McGee, an Assistant Public Guardian, to represent the children's interests. (*Id.* ¶ 27.) Ms. McGee knew Ms. Richardson on a professional basis but had had no contact with her regarding Plaintiff's children prior to July 11, 2003. (*Id.* ¶ 28.) Plaintiff, the State's Attorney, and Ms. McGee reached an agreement that permitted the court to award temporary custody to DCFS without prejudice and postpone a formal hearing to permit Plaintiff to

find counsel. (*Id.* ¶ 29.) The Temporary Custody Hearing Order, a copy of which is attached to Plaintiff's response to the motion for summary judgment, summarizes the evidence in support of the temporary custody order; that evidence included a report that one of Plaintiff's sons had reportedly sexually abused her daughter and that Plaintiff had left her minor children at home without adult supervision. (Pl.'s Resp. at 38 of 86, [Doc. No. 168].) Plaintiff's response also includes an undated and unsigned stipulation that the children, then aged ten and six, had traveled back and forth to school on public transportation by themselves, that the six-year-old was struck by a car while traveling to school, and that a ten-year-old often supervises his siblings, cooks for them without adult supervision, and reported that the children lacked beds to sleep in. (*Id.* at 44-45 of 86.)

On July 29, Attorney Adam Stern appeared on Plaintiff's behalf, and a temporary custody hearing took place. (Def.'s 56.1 ¶ 30.) Investigator Richardson testified, as did Plaintiff, Plaintiff's mother, and Calvin Holmes. (*Id.*) At the conclusion of the hearing, the court awarded temporary custody of the three children to DCFS. (*Id.*) A formal trial was scheduled, but postponed until January 15, 2004. (*Id.* ¶ 31.) On that date, Mr. Stern withdrew and the court appointed Bill London to represent Plaintiff. (*Id.*) After a further delay to enable Attorney London to review discovery materials, the trial was set for March 19, 2004. (*Id.* ¶ 32.) On that date, however, Mr. London withdrew, and the court appointed yet another attorney, Shawn Eddings, to represent Plaintiff. (*Id.*) The trial was re-set to March 31, but on that date, Ms. Eddings sought leave to withdraw; after a colloquy with the court a week later, Plaintiff agreed to permit Ms. Eddings to represent her, and the case was continued yet again, to April 16, 2004. (*Id.* ¶ 33.) On April 16, the trial was continued to May 6 at the request of the Assistant State's Attorney, and then in response to Plaintiff's concerns, was pushed back from May 6, 2004 to May 11, 2004, so that the court could hear testimony from a DCFS case worker regarding the status of the children. (*Id.* ¶¶ 34, 35.) On May 11, 2004, Plaintiff and the case worker testified. A week later, Attorney Eddings reported that

Plaintiff wished to appear *pro se,* and the court directed Ms. Eddings to stay on in an advisory capacity. (*Id.* ¶ 37.) The court heard motions on several dates in June 2004 and the trial finally proceeded on July 9. (*Id.* ¶¶ 38, 39.) Ms. Richardson and another DCFS investigator, Catherine Oglesby, testified. (*Id.* ¶ 39.) Attorney Joseph Vitale was appointed to replace Ms. Eddings as Plaintiff's advisor and was later directed to serve as "co-counsel" to Plaintiff. (*Id.* ¶¶ 40, 41.) Plaintiff cross-examined Ms. Richardson on three further dates, but when Plaintiff herself was called to testify on September 30, 2004, she refused to do so, invoking the Fifth Amendment. (*Id.* ¶¶ 42, 43.) Instead, on October 25, 2004, Plaintiff called her mother and Ms. Oglesby as her own witnesses; the court sustained DCFS's objection to hearing testimony from Plaintiff's three children. (*Id.* ¶¶ 44, 45.) Plaintiff was, however, permitted to present certain exhibits and to call three other witnesses. (*Id.* ¶ 46.)

On December 20, 2004, the court heard closing arguments and made findings that all three children had been subjected to neglect due to lack of care; neglect due to an injurious environment, and abuse due to a substantial risk of physical injury. In addition, the court found one of the boys had been subjected to sexual abuse, and that Plaintiff was unable and unwilling to care for the other two. (*Id.* ¶¶ 47, 48.) After several more hearings, the court entered a "permanency order setting the goal of private guardianship" on September 29, 2005. Almost two years later, on June 5, 2007, the court granted DCFS's petition for appointment of a private guardian for two of Plaintiff's children. (*Id.* ¶ 51.) Plaintiff's parental rights have never been terminated, however. Plaintiff has never completed parenting programs recommended by DCFS, nor has she petitioned the state court for the return of her children. (*Id.* ¶¶ 51, 52.) She has, however, filed several appeals. All have been dismissed either for lack of jurisdiction or for want of prosecution. (*Id.* ¶¶ 53-60.)

At her deposition in this case, Plaintiff testified that she chose not to seek the return of her children in state court but instead filed this action because she believes that "the Federal Court can then return [her] back to the Juvenile Court to regain permanent custody of my kids." (Pl.'s Dep.

83:14-16, Ex. 1 to Def.'s 56.1)  She contends the orders entered in state court were "fraudulent," explaining at her deposition that one of the orders had been drafted by Michele McGee and that others were entered without her knowledge.  (Pl.'s Dep. 76, 78.)  She asserts, further, that the process was delayed improperly and that no witness "[o]utside of [DCFS]'s paid people" presented evidence of abuse or neglect.  (*Id.* at 79, 80.)  When asked at her deposition, "Do you have any evidence that the Office of the Public Guardian treated individuals of any other color, race or religion differently?" Plaintiff answered "No.  But [I] was told [that] . . . this kind of things—this kind of actions, they happen all the time."  (*Id.* at 81.)  Plaintiff acknowledged, further, that she had no evidence that Michele McGee or any other OPG employee had conspired with other agencies to deprive her of her rights.  (*Id.* at 85.)  McGee has submitted an affidavit in which she asserts that she had no policy making role within OPG and did not enter into any agreement with any public or private agency regarding Plaintiff's parental rights.  (McGee Aff. ¶¶ 2, 35, Ex. 2 to Def.'s 56.1.)

## **DISCUSSION**

The standard of review for a summary judgment motion is well-recognized.  The court will grant summary judgment when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  In reviewing the record, the court will consider the evidence, and draw reasonable inferences from it, in the light most favorable to the nonmovant, *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000), but a party cannot defeat summary judgment by relying on unsubstantiated facts or by resting on its pleadings. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).  Instead, on summary judgment, the party who bears the burden of proof on an issue must affirmatively demonstrate that there is a genuine issue of material fact for which a trial is required.  *Hemsworth*, 476 F.3d at 490.

Defendant OPG has made several arguments in support of its motion for summary

judgment. As it did in its motion to dismiss, OPG urges that it is a state office, shielded from liability by the Eleventh Amendment. In addition, OPG argues that the evidence is insufficient to support Plaintiff's claims and that Plaintiff has not shown that any alleged wrongdoing is a product of official policy, as required for liability under the *Monell* doctrine. *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691 (1978). Finally, OPG argues that this case should be dismissed pursuant to the *Rooker-Feldman* doctrine. *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The court declines to revisit its determination that as a county office, OPG does not enjoy Eleventh Amendment immunity. Such immunity would not, in any event, bar an action for injunctive relief. As explained below, however, the court concludes that the *Rooker-Feldman* defense is dispositive and requires dismissal of this case.

**I.**     ***Rooker-Feldman* Bars this Case**

The *Rooker-Feldman* doctrine strips the lower federal courts of jurisdiction to review state court judgments. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). In numerous cases, the Seventh Circuit has held that the *Rooker-Feldman* doctrine bars an action that seeks reversal of a state court child custody ruling. Thus, in *Davis v. Allen County Office of Family and Children*, where an Indiana state court had terminated plaintiff's parental rights, plaintiff alleged that the county welfare office had discriminated against him and falsified documents. *Davis*, No. 96-1953, 1997 WL 267863, at * 1 (7th Cir. May 6, 1997). In affirming the dismissal of the case for lack of subject matter jurisdiction, the Seventh Circuit noted that the court must "'ask whether the injury the plaintiff alleges results from the state court judgment itself or is distinct from that judgment.'" *Id.* (quoting *GASH Assoc. v. Village of Rosemont*, 995 F.2d 726, 728-29 (7th Cir. 1993)). In the case before this court, as in *Davis*, the injury Plaintiff suffered is the loss of her parental rights. That injury was caused by the state court judgment, and this court has no jurisdiction to provide a remedy for it. Similarly, in *Mannix v. Machnik*, an Illinois court awarded custody of the plaintiff's two

7

minor sons to her ex-husband. The plaintiff then filed a federal lawsuit against the state judges and certain "John Doe" defendants but, as the Seventh Circuit observed, she did not "seek prospective relief against a statute or rule that is said to be unconstitutional. Instead, she contends that the state judiciary has erred in her particular case," a claim that cannot be entertained in federal court. *Mannix*, Nos. 06-2120, 06-2369, 06-2435, 2007 WL 1958633, at * 1 (7th Cir. July 3, 2007). *See also Rangel v. Reynolds*, 607 F. Supp.2d 911, 920 (N.D. Ind. 2009) (§ 1983 suit against state and county employees involved in investigation that led to termination of plaintiffs' parental rights was, in part, a request for reversal of the state court's decision and hence barred by *Rooker-Feldman*).

Most recently, in *Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356 (7th Cir. 2010), the plaintiff brought an action against his former wife's attorney, the wife's friend and business associates, a neighbor, and the court-appointed representative for his minor child. He alleged that defendants had conspired to damage his relationship with his daughter, impugn his reputation, and destroy his financial well-being. *Id.* at 359. The Seventh Circuit relied on the *Rooker-Feldman* doctrine in affirming dismissal of the claims against the court-appointed attorney. The court pointed out that the parties to the federal case had also been involved in proceedings in state court,

> and the only injury that [plaintiff] alleges that he has suffered from [court-appointed counsel]'s supposedly biased advocacy is the alienation of [the child]'s affections and a reduction in [plaintiff's] custodial rights. These harms flow directly from the fruit of [counsel]'s efforts: state court custody orders favorable to [plaintiff's ex-wife]. [Plaintiff] has not alleged a procedural harm that is separate and independent from the state court's custody determination . . . . *Rooker-Feldman* acts as a jurisdictional bar.

*Id.* at 362.

In denying Defendant OPG's motion to dismiss this case based on the *Rooker-Feldman* doctrine, this court noted that OPG raised that defense for the first time in its reply brief, and cited *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006). In *Loubser*, the Seventh Circuit had reversed the dismissal of a *pro se* complaint on motion, explaining that the allegation that a defendant had

8

"so far succeeded in corrupting the state judicial process as to obtain a favorable judgment" is not barred by the *Rooker-Feldman* doctrine. 440 F.3d at 441. The Seventh Circuit later characterized *Loubser* as holding that the "Constitution forbids [the] decision of child-custody disputes by a bribed judiciary." *Mannix*, 2007 WL 1958633, at * 1. The court need not address whether Loubser's allegations, which the court called "highly improbable," 440 F.3d at 441, would survive scrutiny under the later-decided *Twombly* and *Iqbal* decisions. Plaintiff Taylor-Holmes is before the court on a motion for summary judgment, not a motion to dismiss, and has offered no evidence of bribery or corruption in this case. Her federal lawsuit is an effort to overturn the state courts' decisions, and is therefore dismissed.

## II.    Plaintiff's Evidence Is Insufficient

The *Rooker-Feldman* doctrine dooms this case, but Plaintiff's claim has little chance of success on its merits in any event. Apart from her own disagreement with the outcome of the state proceeding, Plaintiff offers no support for her assertion that Defendant OPG did not act in her children's best interests. She has not identified any records that Defendant failed to disclose, falsified, or otherwise tampered with. She herself has presented numerous documents that were part of the record in the state court custody proceeding but does not explain which orders were purportedly entered in secret. The record shows that the delays she complains of here were in fact agreed; but assuming that she objected to the delays, she has not explained how any such delays prejudiced her or violated any federal constitutional rights. She acknowledges she has no evidence of the alleged conspiracy and that her sole basis for believing she suffered discrimination is the hearsay statement from some unidentified source that "these things happen all the time." (Pl.'s Dep. 81:23-24.)

As the court understands her claims, Plaintiff believes that the appointment of Ms. McGee was somehow improper and that the participation of more than one judge in her state case is suspicious. Nothing in the record indicates any impropriety in either of those matters, however.

Nor is this court concerned by Plaintiff's allegation that the state court judges signed orders that had been drafted by counsel. To the contrary, this court's review of the record, as presented here, supports the conclusion that Plaintiff was accorded her full due process rights in state court: She participated in numerous hearings, was represented by appointed counsel, had access to discovery, cross-examined the witnesses against her, and was permitted to call her own witnesses, despite her own refusal to testify. She filed appeals, both on her own and through counsel. Her own parental rights have never been terminated, and she has been free at all times to petition the state courts for the return of her children. The suggestion that those circumstances violate due process is frivolous.

## CONCLUSION

Plaintiff is troubled by the state court process by which she lost custody of her children. She offers no evidence that any aspect of that process violated her federal constitution rights, however. And, to the extent she seeks relief for the loss of custody, that injury was caused by the state court's ruling, and this court lacks jurisdiction to afford a remedy. Defendant's motion for summary judgment [Doc. No. 162] is granted. This case is dismissed.

ENTER:

Dated: January 4, 2011

REBECCA R. PALLMEYER
United States District Judge